IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DONALD LAWSON,                    *
                                  *
        Plaintiff,                *
                                  *
    v.                            *        CV 422-070
                                  *
TSAY/FERGUSON-WILLIAMS, LLC,      *
                                  *
        Defendant.                *

## O R D E R

Presently pending before the Court are Defendant's motion to dismiss the original complaint (Doc. 14), Defendant's motion to dismiss Plaintiff's first amended complaint (Doc. 21), Defendant's motion for summary judgment (Doc. 46), Plaintiff's motion to defer consideration of Defendant's motion for summary judgment (Doc. 58), and Plaintiff's motion for oral argument (Doc. 63).  For the following reasons, Defendant's motions to dismiss are **DENIED AS MOOT,** Defendant's motion for summary judgment is **DENIED,** Plaintiff's motion to defer consideration is **DENIED,** and Plaintiff's request for oral argument is **DENIED.**

## I. BACKGROUND

Plaintiff originally filed suit March 29, 2022.  (Doc. 1.) Defendant moved to dismiss the original complaint on May 31, 2022.

(Doc. 14.)   Plaintiff filed his first amended complaint (hereinafter, the "Complaint") on June 14, 2022 (Doc. 16), so Defendant's original motion to dismiss (Doc. 14) is **DENIED AS MOOT.** See Renal Treatment Ctrs. – Mid-Atl., Inc. v. Franklin Chevrolet-Cadillac-Pontiac-GMC, No. 608CV087, 2009 WL 995564, at *1 (S.D. Ga. Apr. 13, 2009) ("It is well-established than an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect." (citations omitted)).

Plaintiff's Complaint alleges five claims under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA")[1]: (1) discrimination based on failure to reasonably accommodate; (2) discrimination because Defendant regarded Plaintiff as having a disability; (3) discrimination on the basis of disability; (4) discrimination based on Plaintiff's record of disability; and (5) retaliation and coercion because of protected activity under the ADAAA. (Doc. 16, at 10-22.) Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge, No. 415-2019-00616 (the "Charge"), on February 19, 2021 and received a right to sue letter dated December 30, 2021. (Id. at 4 (citing Docs. 16-1, 16-2).) The underlying facts, as alleged in the Complaint, and relevant to the motion to dismiss, are as follows.

---

[1] The ADAAA, effective January 1, 2009, amended the Americans with Disabilities Act ("ADA") and made numerous changes, including a broader definition of "disability." See Richardson v. Honda Mfg. of Ala., LLC, 635 F. Supp. 2d 1261, 1269 (N.D. Ala. 2009) (citations omitted).

On October 13, 2020, Plaintiff interviewed with Defendant's manager Kim Clary.  (Id. at 5.)  Ms. Clary offered him the job of Water Plant Operator by the time he got to the parking lot.  (Id.) On October 22, 2020, Plaintiff returned to Defendant's premises to fill out paperwork and consent to a background check and drug test. (Id.)  During the meeting, Ms. Clary directed Plaintiff to complete the on-boarding paperwork, including signing a letter to accept the job.  (Id. at 5-6.)  Plaintiff provided Ms. Clary a complete list of his medications and medication regime printed on letterhead from his physician, with the physician's contact information.  (Id. at 6.)  Ms. Clary asked Plaintiff whether he had any disabilities that prevented him from performing the job, and he replied that he had performed almost the same job at the City of Savannah for over twelve years.  (Id.)  Ms. Clary already knew Plaintiff's condition of back and neck pain and the specific medications he took for that pain.  (Id.)

On November 2, 2020, Plaintiff provided a urine sample for the drug test, and it came back negative for all illegal drugs, but positive for the medications on the list he provided Ms. Clary. (Id. at 6-7.)  After passing the drug test and background check, Plaintiff was directed to report to Defendant's worksite at Fort Stewart, Georgia on November 12, 2020 to start work as a Water Plant Operator.  (Id. at 7.)  Plaintiff's first assignment was to ride "passenger seat training" with a Senior Water Plant Operator.

(<u>Id.</u>)  On November 16, 2020, Defendant's trainer told Plaintiff he was "more than trained," and on November 18, 2020, Plaintiff was released to perform his position unsupervised.  (<u>Id.</u> at 7-8.)

Plaintiff worked until November 30, 2020 when he was informed by Ms. Clary that his employment was being terminated due to his pain medication.  (<u>Id.</u> at 8.)  Plaintiff asked Ms. Clary if there was anything he could do to keep his job, including providing assurances from his physician and/or changing his medication. (<u>Id.</u>)  Ms. Clary agreed to contact corporate management and follow up.  (<u>Id.</u>)  Relying on Ms. Clary's representation that she was going to present the information to her corporate supervisors, Plaintiff sought information from his physician.  (<u>Id.</u> at 9.)  On December 1, 2020, Plaintiff informed Ms. Clary he had a note signed by his physician stating his prescribed medications did not affect his ability to work or drive, and he provided the information to her.  (<u>Id.</u>)  On December 3, 2020, Plaintiff called to get an update, and Ms. Clary assured Plaintiff she was waiting to hear back from her corporate supervisors.  (<u>Id.</u>)  Defendants failed to interact with Plaintiff again.  (<u>Id.</u>)

## II. MOTION TO DISMISS

Defendant moves to dismiss the Complaint, arguing Plaintiff either refused to engage in the interactive process or lied during his onboarding process.  (Doc. 21, at 2.)  It argues that Plaintiff

disclaimed any disability, failed to identify any medication he would need to take during the day to perform his job, and did not affirmatively report any of the conditions he now claims, whether perceived or otherwise. (Id.) Additionally, Defendant argues Plaintiff confirmed in his EEOC charge that his medications were not taken during work hours yet attempts to claim he was terminated for doing just that. (Id.) Ultimately, Defendant argues Plaintiff's allegations are baseless and should be dismissed. (Id.) Defendant attaches numerous exhibits to its motion to dismiss, including Plaintiff's list of medications, drug test results, Defendant's drug policy, Defendant's fleet safety management program, Plaintiff's self-identification form from hiring, and more. (See Doc. 21-1.) Defendant asserts that if the Court needs to convert the motion to dismiss into a motion for summary judgment to consider this evidence, that it should do so. (Doc. 21, at 3.) In response, Plaintiff argues Defendant's allegations lack proper factual support, it cannot seek dismissal by offering unsworn testimony, and the testimony offered is hearsay. (Doc. 25, at 4.) Plaintiff also argues that matters outside the pleadings cannot be considered, and the Court should deny the motion and let the Parties move forward with discovery. (Id. at 8.)

**A. Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v.

Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

**B. Discussion**

The first issue the Court must consider is the slew of evidence Defendant attached to its motion to dismiss. (Doc. 21-1.) Defendant encourages the Court to convert the motion into a motion for summary judgment so the attached evidence can be considered, but in the meantime, Defendant has also filed a motion for summary judgment. (Doc. 21, at 3; Doc. 46.)

Generally, when considering a motion to dismiss pursuant to Rule 12(b)(6), the district court is restrained to consider the allegations within the four corners of the complaint. See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). A district court, however, may "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018) (citations omitted); see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court," the district court "must convert the motion to

dismiss into a summary judgment motion." FED. R. CIV. P. 12(d); <u>SFM Holdings</u>, 600 F.3d at 1337.

Defendant relies on the exhibits attached to its motion to dismiss for the majority of its arguments. (<u>See</u> Doc. 21.) Meanwhile, Plaintiff disputes the authenticity of the exhibits. (Doc. 25, at 9-12.) Thus, the Court cannot find the exhibits are referred to in the Complaint or of undisputed authenticity. Thus, to consider them, the Court will have to convert the motion to dismiss into a motion for summary judgment. However, because Defendant has since filed a motion for summary judgment with many of the same arguments, the Court **DENIES AS MOOT** Defendant's motion to dismiss. (Doc. 21.) The Court considers Defendant's motion for summary judgment below.

### III. MOTION TO DEFER RULING

On September 30, 2023, Plaintiff moved the Court to defer considering Defendant's motion for summary judgment until the Parties can complete discovery. (Doc. 58, at 1.) Defendant requests the Court deny the motion to defer. (<u>See</u> Doc. 61.)

The history of discovery in this case is helpful to note. Plaintiff filed his Complaint (Doc. 16), and Defendant filed a motion to dismiss (Doc. 21). The Court denied Defendant's motion to stay discovery pending disposition of Defendant's motion to dismiss but sought from the Parties specific limitations on

discovery while the motion to dismiss was pending. (Doc. 24, at 4-5.) Based on the Parties' submissions, the Court entered an amended scheduling order on November 4, 2022 (the "Scheduling Order") with a bifurcated discovery process. (Doc. 36.) The Parties were only permitted to conduct discovery on the following topics during the motion to dismiss' pendency:

> (a) Whether Plaintiff took prescription drugs, including but not limited to morphine and Percocet, during dates/times in which he was working for Defendant;

> (b) Defendant's workplace rules and practices regarding 1) applicants for employment who take prescription drugs, 2) employees taking prescription drugs, and 3) requesting and providing accommodations for disabilities; and Defendant's knowledge of prescription drugs taken by Plaintiff;

> (c) Whether Plaintiff disclosed or otherwise informed Defendant of his alleged disability; stated another way, Defendant's awareness of Plaintiff's alleged disability;

> (d) The factors known and/or considered by Defendant in hiring Plaintiff and the factors known and/or considered by Defendant in terminating and refusing to further employ Plaintiff - and Defendant's rules and practices regarding the same;

> (e) Whether Plaintiff included false information on his application for employment with Defendant, during the onboarding process, or at any time during his employment for Defendant; and

> (f) Whether Plaintiff properly and in a timely manner asked for a reasonable accommodation for any alleged disability, and if it is one the company would be required to grant.

(Id. at 2-3.)

Plaintiff argues Defendant's motion for summary judgment "embarks upon an expense-laden excursion outside [the discovery]

limitations." (Doc. 58, at 5.) He asserts issues requiring expert testimony and related to damages were beyond the limitations of the Scheduling Order, yet Defendant's motion for summary judgment seeks final judgment on these issues. (<u>Id.</u> at 5-6.) While Plaintiff responded to Defendant's proffered expert testimony with his own expert, pursuant to the discovery limitations, he was not able to cross-examine Defendant's expert witness. (<u>Id.</u> at 7.) Based on the foregoing, Plaintiff objects to the admissibility of facts related to discovery topics outside the limitations of the Scheduling Order, or for the Court to defer consideration of the motion for summary judgment so Plaintiff may fully respond after discovery is completed. (<u>Id.</u> at 8-9.) Plaintiff also attached an affidavit of his attorney who stated: "Plaintiff is unable to present facts essential to justify his opposition to" Defendant's motion for summary judgment. (Doc. 58-1, at 2.) Specifically, he noted Plaintiff is unable to present the following:

> - Facts related to the alleged expertise of Defendant's expert Dr. Croft,
> - Facts upon which Defendant's expert Dr. Croft based his alleged expert opinion,
> - Facts related to damages, including without limitation, financial loss of Mr. Lawson arising out of unlawful termination of his employment,
> - Facts related to valuation of Mr. Lawson's financial losses, and
> - Other facts described in the Court's limitations on discovery as set forth in the Amended Scheduling Order.

(<u>Id.</u> at 3.)

Defendant argues Plaintiff's motion is futile because no additional discovery could uncover a doctor's note to support that

it was safe for Plaintiff to operate a vehicle and conduct the activities required for his job while on his medications. (Doc. 61, at 1.) It asserts that Plaintiff has not previously expressed a need for additional information through a motion to compel discovery or by informing the Court discovery requests were still outstanding. (Id. at 2.) Defendant argues the Parties agreed to conduct discovery outside the scope of the Scheduling Order, so Plaintiff's late plea is disingenuous and not a sufficient reason for not getting the information on damages when he had the opportunity to do so. (Id.) Overall, Defendant asserts Plaintiff has conducted full and fair discovery on all of Defendant's witnesses. (Doc. 65, at 2.)

"The law in this circuit is clear: the party opposing a motion for summary judgment should be given an adequate opportunity to complete discovery prior to consideration of the motion." Walker v. JPMorgan Chase Bank, N.A., 987 F. Supp. 2d 1348, 1352 (N.D. Ga. 2013) (quoting Jones v. City of Columbus, 120 F.3d 248, 253 (11th Cir. 1997)). Despite this, "'an adequate opportunity to complete discovery' does not mean that a motion for summary judgment made before the close of discovery is per se premature." Id. (quoting Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843 (11th Cir. 1989)). A motion for summary judgment filed before the close of discovery is contemplated by Federal Rule of Civil Procedure

56(d).[2]  <u>Wallace v. Brownell Pontiac-GMC Co.,</u> 703 F.2d 525, 527

(11th Cir. 1983).  "Subsection ([d]) allows a party who has no

specific material contradicting his adversary's presentation to

survive a summary judgment motion if he presents valid reasons

justifying his failure of proof."  <u>Id.</u> (citation and quotation

marks omitted).  A party in this situation must offer an affidavit

explaining to the Court why he is unable to make a substantive

response.  <u>Id.</u>

> [T]he nonvovant may not simply rely on vague assertions
> that additional discovery will produce needed, but
> unspecified, facts, but rather he must specifically
> demonstrate how postponement of a ruling on the motion
> will enable him, by discovery or other means, to rebut
> the movant's showing of the absence of a genuine issue
> of fact.

<u>Id.</u> (quoting <u>SEC v. Spence & Green Chem. Co.,</u> 612 F.2d 896, 901

(5th Cir. 1980), *cert. denied,* 449 U.S. 1082 (1981),

The Court must first turn to the motion for summary judgment

to determine the basis for it and whether additional discovery is

necessary for Plaintiff to present a valid response.  Defendant

moves for summary judgment on the same bases it moved to dismiss:

Plaintiff never asked for an accommodation, and Defendant did not

terminate him because of his disability.  (Doc. 46, at 1.)

Specifically, it argues Plaintiff's disability discrimination

claim fails because he represented to Defendant that he did not

have a disability and never requested accommodation; his

---

[2] The case-law references subsection (f).  However, after amendment of the Rule, subsection (d) carries forward without substantial change the provisions of former subsection (f)

retaliation claim fails because Plaintiff did not engage in a protected activity prior to an adverse action and there is no causal link between the alleged protected activity and his termination; and his claim for damages fails because Plaintiff cannot produce evidence he suffered physical, mental, and emotional damages or that Defendant acted with malice or discriminatory intent. (Doc. 46, at 10.) Discovery was permitted regarding whether Plaintiff took prescription drugs; Defendant's workplace rules and practices; Defendant's knowledge of prescription drugs taken by Plaintiff; whether Plaintiff disclosed or otherwise informed Defendant of his alleged disability; the factors known and/or considered by Defendant in hiring and terminating Plaintiff; whether Plaintiff included false information on his application; and whether Plaintiff properly and asked for a reasonable accommodation. (Doc. 36, at 2-3.)

Plaintiff provided extensive briefing on the motion for summary judgment, showing he at least has a substantial amount of information in opposition to Defendant's motion. (See Docs. 55, 62, 68.) Further, while expert testimony was not included in the Scheduling Order, the Parties, on their own, agreed to extend the scope of their discovery without Court intervention to allow for expert depositions. Finally, viewing Defendant's arguments for summary judgment alongside the permitted discovery topics, the Court finds Plaintiff had adequate discovery to respond to the motion for summary judgment, and it can be ruled on at this time.

If issues arise in the Court's analysis that it concludes were outside the scope of discovery, and thus Plaintiff was unable to dispute, then it will address them below.  Based on the foregoing, Plaintiff's motion to defer ruling on the motion for summary judgment (Doc. 58) is **DENIED.**

## IV. MOTION FOR SUMMARY JUDGMENT

The Court outlined Defendant's arguments above.  It will now provide an overview of the undisputed facts, and then address Defendant's basis for summary judgment.

### A. Undisputed Facts[3]

Defendant is a federal contractor at Fort Stewart.  (Doc. 60-1, at 3.)  On October 21, 2020, Plaintiff was interviewed by Defendant for a position as a Waste/Wastewater Operator.  (Id. at 4.)  Plaintiff was given a drug test and two samples were taken – one returned "non-negative" and the other "negative".  (Id. at 4-5.)  Defendant only received the negative results at the time of Plaintiff's onboarding and received the positive result later. (Id. at 5.)  Defendant's policy requires all employees be drug and alcohol free, and Plaintiff was aware of this policy.  (Id. at 6.) Additionally, its policies require employees that perform work on

---

[3] Defendant did not comply with Local Rule 56 and annex to its motion for summary judgment a separate, short, and concise statement of material facts.  (See Doc. 46, at 7-9.)  After Plaintiff pointed this out (Doc. 55-1), Defendant filed a reply to Plaintiff's responses.  (Doc. 60-1.)  Thus, any non-compliance is excused.  The Court cautions Defendant moving forward to comply with the Local Rules.

its premises and work sites, or drive a motor vehicle on business, or otherwise on duty, be free of illegal drugs and or alcohol, and Plaintiff was also aware of this. (Id. at 7.) Operating heavy machinery and driving company vehicles are requirements of the Water Plant Operator job with Defendant. (Id.) Defendant's fleet management policy states a driver must not operate a vehicle at any time when his/her ability to do so is impaired or influenced by alcohol, illegal drugs, or prescribed or over-the-counter medication, illness, fatigue, or injury. (Id. at 8.) Again, Plaintiff was aware of and signed this policy and understood he could lose his job if he violated it. (Id.)

On October 22, 2020, Plaintiff was offered a job with Defendant as a Water Plant Operator, which he accepted. (Id. at 9.) Plaintiff did not ask for an accommodation for any perceived or real disability but did ask for time off to go to pain management appointments after he was hired. (Id. at 10-11.) While employed by Defendant, Plaintiff took prescription medication for pain management. (Id. at 12.) Defendant claims Mr. Floyd, who was training Plaintiff, saw Plaintiff taking opioids and vitamins while driving Defendant's truck at Fort Stewart. (Id. at 13.) Pursuant to Defendant's procedures, Mr. Floyd reported the incident to Mr. Keithley, who in turn reported it to Defendant's human resources specialist, Ms. Oselio. (Id. at 13-14.) Following an investigation, Plaintiff was terminated. (Id. at 14.)

Defendant's expert stated the medication Lawson was prescribed would impair and prohibit him from fulfilling his job duties in a safe manner. (Id. at 15.)  Plaintiff provided a note after his termination to explain his medication and situation to Defendant; however, the note was not signed by a physician and failed to describe the effect the drugs had on him.  (Id. at 16.)

## B. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted).  The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).  The Court should not weigh the evidence or determine credibility. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as

to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

Defendant does not bear the burden of proof at trial, and therefore may "satisfy [its] initial burden on summary judgment in either of two ways." McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)). First, it "may simply show that there is an absence of evidence to support [Plaintiff's] case on the particular issue at hand." Id. (citation omitted). If this occurs, Plaintiff "must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. (citation omitted). Or second, Defendant may "provide affirmative evidence demonstrating that [Plaintiff] will be unable to prove [his] case at trial." Id. (citation omitted and emphasis in original).

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill

every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties specifically cite and legal arguments they expressly advance. See id.

In this action, the Clerk of Court provided Plaintiff notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 49.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff responded to the motion (Doc. 55), Defendant replied (Doc. 60), Plaintiff filed a sur-reply (Doc. 62) and a supplemental brief (Doc. 68), and Defendant responded to the supplemental brief (Doc. 69). The time for filing materials has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration. In reaching its conclusions, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## B. Discussion

Defendant moves for summary judgment on three bases: Plaintiff represented to Defendant he did not have a disability and never requested accommodation, Plaintiff did not engage in protected activity prior to adverse action, and Plaintiff cannot prove he suffered damages or that Defendant acted with malice or

discriminatory intent.   (Doc. 46, at 10.).  The Court addresses these arguments in turn.

### 1. Disability Discrimination

Defendant argues Plaintiff's disability discrimination claim fails as a matter of law because Plaintiff is not a qualified individual, and even if he was, Defendant was not made aware of his disability and Plaintiff never requested accommodation.  (Doc. 46, at 12.).  Because of this, Defendant was not required to engage in an interactive dialogue with Plaintiff, and even if it was so required, the accommodation Plaintiff requested was not reasonable and was unduly burdensome.   (Id.).   Plaintiff disputes these contentions, arguing he was a qualified individual under the ADAAA, Defendant was aware of his medication condition at the time he requested an accommodation, Defendant abandoned the interactive dialogue, and the accommodations requested were not unreasonable or an undue burden.   (Doc. 55-2, at 9-15.).

#### a. *Direct Threat*

To succeed on a claim for disability discrimination, Plaintiff must show: (1) he has a disability, (2) he is a qualified individual under the ADA, and (3) Defendant discriminated against him on the basis of his disability.  Akridge v. Alfa Ins. Cos., 93 F.4th 1181, 1191 (11th Cir. 2024) (citation omitted).  "A qualified individual is one who 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"   Lewis v. Union Home

Mortg. Corp., No. 22-13976, 2023 WL 6568123, at *2 (11th Cir. Oct. 10, 2023) (quoting Lewis v. Union City, 934 F.3d 1169, 1182 (11th Cir. 2019)). The essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." Id. (quoting 29 C.F.R. § 1630.2(n)(1)). The essential functions are evaluated case-by-case, and factors to consider include:

> (1) the employer's judgment regarding which functions are essential; (2) the posted job descriptions; (3) the time spent on the job performing the function; (4) the consequences of not performing the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past employees; and (7) the current work experience of employees in similar jobs.

Id. (citing Lewis, 934 F.3d at 1182). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Defendant argues Plaintiff was not qualified because his alleged disability is a direct threat to the safety of others and himself. (Doc. 46, at 14.) Plaintiff asserts he was not a direct threat, no individualized assessment was performed, and there was no evidence in the record, so Defendant's direct threat defense fails. (Doc. 55-2, at 10.). In response, Defendant argues that just because Plaintiff had prior similar work experience, and those employers assumed the risk of harm, does not mean Defendant had to

20

do the same.   (Doc. 60, at 3.)   Plaintiff again disputes this, arguing Defendant's "high risk" argument is unsupported and creates no recognized defense under the ADAAA.   (Doc. 62, at 6.)

Defendant's argument turns on the fact it operates on a military base and is subject to strict regulations and protocols provided by the Army and federal law.   (Doc. 46, at 13.)   As such, its employees must be in "strict compliance" with several Army and federal safety standards.   (Id.)   Defendant then mentions a regulation that states "a person who is under the influence of intoxicating liquor or any drug to a degree which renders himself a hazard will not walk upon any roadway."   (Id. (quoting 32 C.F.R. § 636.26(g)).)   However, Defendant provides no explanation on how this applies to Plaintiff as a Water Plant Operator.   "The direct threat defense allows an employer to fire a disabled employee if the disability renders the employee a direct threat, meaning a threat that creates a significant risk of substantial harm to the health or safety of the individual or others."   Todd v. Fayette Cnty. Sch. Dist., 998 F.3d 1203, 1216 n.9 (11th Cir. 2021) (internal citations and quotation marks omitted).

While Defendant mentions it must be in compliance with numerous safety standards, including the Army Safety Program and the United States Army Corps of Engineers Safety and Health Requirements Manual, it fails to specifically point to which regulations Plaintiff failed to comply with beyond the one outlined

above.[4]   (See Doc. 46, at 13-14.).   This specific regulation
mentions "walking upon a roadway" and makes no mention of operating
as a Water Plant Operator.   It is not the Court's responsibility
to create arguments for Defendant or look into every regulation it
must follow to determine if Plaintiff was in fact compliant or was
a direct threat.   Since Defendant failed to point to any other
specific reason Plaintiff might be considered as such, the Court
finds there is no way to conclude Plaintiff was a direct threat to
the safety of others and himself and thus unqualified for his
position.   Thus, Defendant's motion is **DENIED** on this ground.

The Court notes that in an ADA action, the plaintiff bears
the burden of persuading the jury he was not a direct threat.
LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 836 (11th
Cir. 1998).   However, Plaintiff provided evidence and argument as
to how he was qualified for the job.   (See Doc. 55-2, at 9-10.)
Thus, at this point in the litigation, Defendant failed to carry
its burden of showing there is no genuine dispute of material fact
on this issue.

    b.   *Notifying Defendant of Disability or Requested*
*Accommodation*

Next, Defendant argues Plaintiff's claim fails because he did
not provide Defendant notice of an alleged disability nor

---

[4] In a November 30, 2020 letter contained in the record, Defendant informed
Plaintiff he must be in compliance with driver safety regulation number 2 –
Impaired Driving.   (Doc. 46-23, at 2.).   However, Defendant makes no arguments
about this regulation or how Plaintiff was not in compliance therewith to
support his motion for summary judgment.

affirmatively requested an accommodation that could have been reasonably granted before his termination. (Doc. 46, at 14.). Plaintiff argues Defendant was aware of his condition because prior to terminating him, Ms. Oselio and Ms. Clary had knowledge of a medical condition requiring pain management medication. (Doc. 55-2, at 11.). Plaintiff asserts that on November 30, 2020, Defendant proposed terminating his employment, but they did not make a final determination. (Id.). Thus, he argues that before Defendant finalized his termination, it was made aware of his condition. (Id.). Defendant asserts Plaintiff did not admit to Defendant he was under the influence of narcotics while at work until his termination interview on November 30, 2020. (Doc. 60, at 3-4.).

When a plaintiff intends to show he can perform the essential job functions with reasonable accommodation, he has the initial evidentiary burden to show his employer can make a reasonable accommodation to enable his employment notwithstanding his disability. Fussell v. Ga. Ports Auth., 906 F. Supp. 1561, 1569 (S.D. Ga. 1995) (citation omitted). But before an employer can make accommodation, it must know that some sort of disability exists. Id. (citation omitted).

There appears to be a genuine dispute of material fact as to when Plaintiff was officially terminated, and when in the timeline of events he made Defendant aware of his condition. Defendant asserts Plaintiff did not request accommodation before he was reported for taking opioids and driving a company truck. (Doc.

46, at 16.). But, Plaintiff asserts Defendant had actual knowledge of his condition when they *proposed* his termination on November 30, 2020. (Doc. 55-2, at 11.). Thus, Plaintiff characterizes the November 30, 2020 interaction as simply a proposed termination, but Defendant characterizes November 30, 2020 as the day he was terminated. (Id.; Doc. 46-1, at 7.). Thus, before getting into the substance of the note Plaintiff attempted to provide to prove his disability and to provide his physician's information about it, the Parties are not in agreement of whether Plaintiff was terminated or simply notified of his termination on November 30, 2020.[5] They characterize the meeting as a termination meeting, but there is also discussion about an ongoing investigation. Without more clear information on when Plaintiff was actually terminated, there exists a genuine dispute of material fact as to whether Defendant had knowledge of Plaintiff's condition prior to his termination.  Thus, summary judgment is **DENIED** on this ground.

c. *Interactive Process*

Next, Defendant argues interactive dialogue was not required with Plaintiff because it is only required after a plaintiff has requested an accommodation. (Doc. 46, at 17-19.). Since there is a genuine dispute of material fact regarding Defendant's knowledge

---

[5] The record contains a copy of a November 30, 2020 letter from Defendant to Plaintiff informing him "[Defendant] is terminating your employment as of November 30, 2020." (Doc. 46-23, at 2.). However, in its briefing and arguments, Defendant does not rely on this letter for proof of actual termination, and so the Court finds it does not clarify the issue of when he was finally terminated.

of Plaintiff's condition pre-termination, summary judgment is not appropriate on the interactive process portion of the claim either.

d. *Unreasonable and Unduly Burdensome Accommodation*

Finally, Defendant argues Plaintiff's alleged accommodation could not be granted because it was not reasonable in light of its strict regulations. (Id. at 19-21.). Again, since the above-mentioned facts are still in dispute, the Court is unable to examine the reasonableness of any alleged accommodation. Thus, summary judgment is not appropriate on this claim at this time.

2. Retaliation

Next, Defendant moves for summary judgment on Plaintiff's retaliation claim, arguing Plaintiff did not engage in a protected expression before he was terminated, and thus he was not terminated for doing so. (Doc. 46, at 21-22.). Plaintiff argues Defendant abandoned its obligations under the ADA after he requested an accommodation at the termination meeting. (Doc. 55-2, at 15-17.).

To establish a retaliation claim under the ADA, Plaintiff must prove he: "(1) engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that a causal connection exists between the two." Castleberry v. Camden Cnty., No. CV 2:16-00128, 2018 WL 4702163, at *13 (S.D. Ga. Sept. 30, 2018) (citing Batson v. Salvation Army, 897 F.3d 1320, 1329 (11th Cir. 2018)). If Plaintiff establishes a retaliation claim, then the burden shifts to Defendant to articulate a nondiscriminatory

reason for the adverse action.   Id. (citing Batson, 897 F.3d at 1329).

Defendant's main argument is that Plaintiff did not request reasonable accommodation.  (Doc. 46, at 22.). In this section, Defendant argues Plaintiff only spoke about his disability after he was caught ingesting opioids during work hours, and that is when Defendant started an investigation. (Id.) As outlined above, here too, Plaintiff asserts he requested accommodation during the November 30, 2020 meeting, and his termination after the brief deliberation by Defendant during the following days shows a failure to accommodate.  (Doc. 55-2, at 16-17.).

As with Plaintiff's disability discrimination claim, there is a genuine dispute of material fact as to his retaliation claim as well.   It is unclear from the Parties' arguments and characterizations of the facts as to what exactly the November 30, 2020 meeting accomplished, whether Plaintiff made an actual request for accommodation, whether Defendant considered an accommodation, and when Plaintiff was actually terminated.  With these key issues still in dispute, and with contradictory characterizations of the events from both sides, the Court finds summary judgment inappropriate at this time.

These disputes also affect the causation requirement of a retaliation claim.   Defendant argues it had no evidence of Plaintiff's alleged disability before the drug use investigation, so Plaintiff cannot establish a retaliation claim when Defendant

has a legitimate, nondiscriminatory reason for his termination. (Doc. 46, at 23-24.).  When looking to causation for a retaliation claim, the Eleventh Circuit has held it "construe[s] the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the adverse action are not completely unrelated."  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (citation and quotation marks omitted and alterations adopted).  Because the Court has found there is a genuine dispute of material fact on whether Plaintiff made Defendant aware of his condition before the termination became final, the causal relation requirement of Plaintiff's claim is also still in dispute.  Thus, summary judgment is **DENIED** as to the retaliation claim.

### 3. Damages

Finally, Defendant moves for summary judgment on Plaintiff's claims for damages, arguing that since his ADA claims fail, his damages claims fail as well.  (Doc. 46, at 24-25.).  Summary judgment is inappropriate for two reasons.  First, since it is still uncertain if Plaintiff will succeed on his claims, the issue of damages is not yet relevant.  Second, the Scheduling Order did not allow for discovery on damages.  Thus, the Parties have not been able to complete discovery on this issue.  Based on this, Defendant's motion for summary judgment is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss the original complaint (Doc. 14), is **DENIED AS MOOT,** Defendant's motion to dismiss Plaintiff's first amended complaint (Doc. 21) is **DENIED AS MOOT,** Defendant's motion for summary judgment (Doc. 46) is **DENIED,** Plaintiff's motion to defer consideration of Defendant's motion for summary judgment (Doc. 58) is **DENIED,** and Plaintiff's motion for oral argument (Doc. 63) is **DENIED.** Pursuant to the Scheduling Order, within **FOURTEEN DAYS** of the date of this Order, the Parties are **DIRECTED** to file a renewed Rule 26(f) Report proposing deadlines for the remaining discovery in this case.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of March, 2024.

_____

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA